IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DOMINADOR LOPEZ; ANASTACIA LOPEZ; LALAINE RABAINO; as Personal Representative of the Estate of JOVENCIO LOPEZ; and ANALYN MANZANO, | ) ) ) ) ) ) ) | CIVIL NO.  06-00325 JMS/KSC ORDER GRANTING IN PART AND DENYING IN PART COUNTY OF KAUAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON |
| Plaintiffs, | ) ) | PLAINTIFFS' COMPLAINT FILED ON JUNE 16, 2006 (COUNTS I-V) AS TO PLAINTIFF LALAINE RABAINO, |
| vs. | ) ) ) | As Personal Representative of the Estate of JOVENCIO LOPEZ |
| COUNTY OF KAUAI and DANILO ABADILLA, individually and in his capacity as police officer with the Kauai Police Department, | ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART COUNTY OF KAUAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' COMPLAINT FILED ON JUNE 16, 2006 (COUNTS I-V) AS TO PLAINTIFF LALAINE RABAINO, As Personal Representative of the Estate of JOVENCIO LOPEZ**

## I. INTRODUCTION

On June 16, 2006, Plaintiffs Dominador Lopez ("D. Lopez"),

Anastacia Lopez ("A. Lopez"), Lalaine Rabaino ("Rabaino") as Personal

Representative of the Estate of Jovencio Lopez ("J. Lopez"), (the "Estate"), and

Analyn Manzano ("Manzano"), (collectively, "Plaintiffs") filed a Complaint

against the County of Kauai (the "County") and Kauai police officer Danilo

Abadilla ("Abadilla"), (collectively, "Defendants"), alleging that Defendants

violated Plaintiffs' constitutional and state rights when the Kauai Police

Department ("KPD") searched their residence pursuant to an allegedly invalid

search warrant.  Plaintiffs contend that Abadilla provided false information in

support of the search warrant, and worked with a confidential source to plant

drugs at the Lopez residence.  Plaintiffs further contend that Abadilla performed

these acts pursuant to a long-standing County policy that condoned planting drugs

on suspects.

Before the court is the County's Motion for Summary Judgment as to

Plaintiff Lalaine Rabaino, as Personal Representative of the Estate of Jovencio

Lopez, filed on August 29, 2007.  Abadilla joins the County's motion.  A hearing

was held on November 13, 2007.  For the reasons stated herein, the court

GRANTS in part and DENIES in part the County's Motion for Summary

Judgment.

## II. **BACKGROUND**

### A.    **Factual Background**

Plaintiffs' claims stem from a search of their residence pursuant to an

allegedly invalid search warrant.

2

### 1.      Plaintiffs

D. Lopez and Rabaino are the children of J. Lopez and A. Lopez.

County Ex. B at 10.[1]  J. Lopez passed away on September 27, 2005.  Rabaino

asserts that she will be named the personal representative of the Estate, and is

currently a named plaintiff on behalf of the Estate.[2]  County Ex. A.  Beyond her

potential role as personal representative of the Estate, Rabaino acted as J. Lopez's

medical care-giver both before and after the KPD search.  County Ex. E at 27.

### 2.      The Search Warrant

On June 14, 2004, Abadilla submitted a sworn affidavit in support of

a warrant to search D. Lopez, his car, and the residence located at 5756 Ani Street,

Kapaa, Kauai, Hawaii (the "Lopez residence") for crystal methamphetamine

("ice") and other drug paraphernalia.  County Ex. C at C00225-44.  In the

affidavit, Abadilla stated that he had received information from a Confidential

---

[1]  During the November 13, 2007 hearing, Plaintiffs withdrew their objections to the admissibility of the County's exhibits for purposes of this motion.

[2]  The County argues that the Estate's claims should be dismissed because Rabaino has not yet been named the personal representative of the Estate and therefore lacks standing to bring this lawsuit.  As the County raised this argument for the first time in its Reply, the court does not address this argument.  The court nonetheless cautions that if Ms. Rabaino has not already done so, she must take the appropriate actions to become personal representative of the Estate.  *See* Fed. R. Civ. P. 17(a)(1) ("No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest . . . .").

Source ("CS") (later identified as Rizal Balgos, Pls.' Ex. 1), that D. Lopez was selling ice from the Lopez residence and his car.  County Ex. C at C00234. Abadilla's affidavit describes that he had watched the CS meet with D. Lopez to purchase ice at several pre-arranged locations and the Lopez residence.  *Id.* at C00234-41.  For each of these purchases, Abadilla asserts that he searched the CS prior to the alleged purchases, provided the CS money to purchase the drugs, continuously followed and monitored the CS to and from the CS's meetings with D. Lopez, and then received the drugs that the CS allegedly purchased from D. Lopez.  *Id.*

Prosecutor Michael Soon reviewed the search warrant, and based on the information Abadilla submitted, State of Hawaii District Court of the Fifth Circuit Judge Trudy Senda signed the warrant on June 14, 2004.  *Id.* at C00198, C00223-24.

### 3.    *The June 18, 2004 Search*

Police officers executed the search warrant on June 18, 2004 at 7:20 a.m.  Upon announcing KPD's presence and search warrant, A. Lopez voluntarily permitted entry by the police.  *Id.* at C00199, C00216.  Abadilla and other officers entered the residence and proceeded to search and clear the rooms.  Officers found A. Manzano in one bedroom, and D. Lopez in this bedroom's private bathroom.

4

*Id.* at 216-17.  In this bedroom and bathroom, police found clear ziplock baggies containing what was later confirmed to be ice, and other drug paraphernalia.  *Id.* at 201-02, 217.

In clearing the rooms, KPD found another bedroom locked.  After knocking and attempting to kick open the door, an officer finally "shouldered open" the door to find J. Lopez.  *Id.* at 216-17.  According to KPD Officer Tada's supplementary report, J. Lopez was "using a walking aide standing next to the bed . . . ."  *Id.* at 217.  However, Rabaino testified that D. Lopez told her that he was attempting to open the door and fell when the officer pushed it open.[3]  County Ex. B at 19-20.

J. Lopez's room was "cleared," and "all" persons found in the residence were "secured."  *Id.* at 217.  A. Manzano and D. Lopez were placed under arrest; J. Lopez was not arrested.  *Id.* at C00200, C00217.  The police ended their search of the Lopez residence at approximately 9:00 a.m.  *Id.* at C00203.

---

[3]  In addition to Rabaino's deposition testimony, submitted by the County, Rabaino provided a declaration regarding statements J. Lopez told her about his health.  The County notes in passing that the Rabaino Declaration may contain hearsay, but nonetheless argues that at most, her declaration is insufficient to prove J. Lopez's injuries.  *See* County Reply Br. 15.  Because the County did not formally object to the Rabaino Declaration, and these statements appear to fall under one or more of the hearsay exceptions, *see* Fed. R. Evid. 803(1), (3), and (4), the court accepts the Rabaino Declaration for purposes of this motion.

### 4.      *J. Lopez's Injuries*

Plaintiffs assert that J. Lopez was injured and passed away as a result of the police raid.  J. Lopez's knees were bruised and bleeding from his fall when KPD had "shouldered open" his door, County Ex. B at 22-23, and he was crying and shaking.  Pls.' Ex. 10 at 40.  In the days following the raid, J. Lopez was depressed, fearful, and exhibited a loss of appetite.  Rabaino Decl. ¶¶ 4, 8; County Ex. B at 57.  J. Lopez also told his family that he was scared and no longer wanted to stay in the house because the police may come back.  Rabaino Decl. ¶ 5; County Ex. B at 57.

On September 27, 2005, over a year after the police raid and after a long history of diabetes, hypertension, and heart problems, J. Lopez passed away.  *See generally* County Exs. B at 27-31, D.  The Certificate of Death lists the cause of death as "(a) cardiopulmonary failure \ 1 hr, (b) aspiration pneumonia\ 1 day, and (c) coronary artery disease \ 2 years."  County Ex. D.

### 5.      *Allegations that KPD Planted Drugs*

The County charged and prosecuted D. Lopez with Promoting a Dangerous Drug 3, Drug Paraphernalia, and Butterfly Knives.  Pls.' Ex. 1.  D. Lopez  maintained his innocence, and alleged that Balgos planted the larger amount of ice found by KPD at the Lopez residence.  Pls.' Exs. 4-7; *see also*

County Ex. C at C00200 (report stating that D. Lopez told Abadilla that he didn't know anything about the drugs, and "[m]aybe my friends left it there.  There are people who visit me sometimes.").  D. Lopez also denies dealing ice to the CS at any of the times listed in Abadilla's affidavit, and denies dealing drugs generally.  Pls.' Ex. 9 at 106-108.

      The charges against D. Lopez were ultimately dropped, three days before a jury trial was to commence.  Pls.' Ex. 1.[4]  Ms. Rosa Flores, the Deputy Prosecuting Attorney, informed D. Lopez's counsel, Mr. Murphy, that the drugs found at the Lopez residence were planted by Rizal Balgos.  Murphy Decl. ¶ 5.[5]

---

[4] For the limited purpose of this motion, the County does not object to the admissibility of Pls.' Ex. 1.

[5] The County objects to the admissibility of the Murphy Declaration as containing hearsay.  The court finds that based on the submissions before the court, the statements cited in this Order are admissible.

Federal Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  A statement is not hearsay, however, if the statement is offered against a party and is "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2)(D).  "Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's [agency or] employment." *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir. 1986); *accord Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1440 (9th Cir. 1990).  For purposes of this motion, and on the record presently before the court, this statement by Ms. Flores while employed as a Deputy Prosecuting Attorney appears to relate to a matter within the scope of that employment.  Therefore, the court finds this statement admissible non-hearsay.  The court also allows Mr. Murphy's statement that D. Lopez "insisted that the drugs found in his house were planted by Rizal Balgos and the case should go to trial" for the non-hearsay purpose of showing that D. Lopez maintained his innocence, but not to show that the drugs were planted by Balgos.  *See*

(continued...)

In a December 12, 2005 memorandum to prosecuting attorney Craig DeCosta,

KPD Chief of Police K.C. Lum, and Deputy Chief of Police Ron Venneman, Ms.

Flores elaborated on her conclusion.  Pls.' Ex. 1.  An anonymous police officer

told Ms. Flores that "it was virtually certain that the larger quantities of drugs

found in [D. Lopez's bedroom] were planted by Rizal Balgos, and that Sgt.

Abadilla knew about it."  *Id.*  Another officer, Officer Channing Tada, confirmed

to Ms. Flores that "he believed Rizal Balgos had planted the drugs found in the

room . . . ."  Both officers told Ms. Flores:

> [T]hey were convinced that Sgt. Abadilla was working with
> Rizal Balgos and arranged for Balgos to plant the drugs.  They
> both stated that the case was dirty from the beginning, but felt
> that there was nothing they could do because Lt. Ale Quibilan
> was reluctant to do anything against Sgt. Abadilla.
> Anonymous said that in the past he and other officers had
> complained to Lt. Quibilan about Sgt. Abadilla's questionable
> practices, but that Lt. Quibilan didn't do anything.  Neither
> Anonymous nor Officer Channing Tada implied that Lt.
> Quibilan was dirty or involved in anything dirty; he just
> seemed reluctant to take any action.

///

///

///

---

[5](...continued)
Murphy Decl. ¶ 4.  Because the court does not rely on the other statements in the Murphy
Declaration, the court does not rule on their admissibility.

*Id.*; *see also* Zenger Decl. ¶ 3 (stating that Ms. Flores told him that Abadilla set up D. Lopez by having Balgos plant drugs, and that Ms. Flores told Mr. De Costa that she did not want to touch the case because it was dirty).[6]

In addition to this instance and the reference to Abadilla's "questionable practices," KPD may have engaged in other instances of planting drugs. Mr. Zenger, an attorney, submitted a declaration that Ms. Flores told him that Mr. De Costa told her that when he was a deputy prosecutor he told Michael Soong, the County Prosecutor, that there were officers he would not work with because Mr. De Costa knew they planted drugs. Zenger Decl. ¶ 3.[7]

_____

[6] Like the similar statement in the Murphy Declaration, based on the record before the court, this statement appears to be non-hearsay pursuant to Fed. R. Evid. 801(d)(2)(D).

[7] The County objected to this statement as containing multiple levels of hearsay. Where a statement includes the statement of another -- a multiple hearsay situation -- each statement must qualify under some exception or exemption to the hearsay rules. *United States v. Arteaga*, 117 F.3d 388, 396, n.12 (9th Cir. 1997). From the record before the court, each of these statements was made by individuals employed as County prosecuting attorneys, and relate to a matter within the scope of their employment. Accordingly, each statement is non-hearsay pursuant to Fed. R. Evid. 801(d)(2)(D).

Further, that the statements were relayed through several County employees does not affect the import of these statements. Where the statement is one of a party-opponent, "[n]o guarantee of trustworthiness is required . . . ." *Mayor of City of Phila. v. Educ. Equality League*, 415 U.S. 605, 646 (1974). Rather,

> [t]he freedom which admissions have enjoyed from technical demands of searching for an assurance of trustworthiness in some against-interest circumstance, and from the restrictive influences of the opinion rule and the rule requiring firsthand knowledge, when taken with the apparently prevalent satisfaction with the results, calls for generous treatment of this avenue to admissibility.

(continued...)

## B.    Procedural Background

Plaintiffs allege the following five causes of action:  (1) 42 U.S.C. § 1983 violations based on an illegal search of residence in violation of Plaintiffs' Fourth and Fourteenth Amendment rights (Count I); (2) 42 U.S.C. § 1983 violations based on an illegal seizure, arrest and detention of Plaintiffs in violation of Plaintiffs' Fourth and Fourteenth Amendment rights (Count II); (3) 42 U.S.C. § 1983 violations based on an invasion of privacy in violation of Plaintiffs' Ninth and Fourteenth Amendment rights (Count III); (4) intentional infliction of emotional distress under Hawaii state law (Count IV); and (5) punitive damages (Count V).[8]

On August 29, 2007, the County filed a Motion for Summary Judgment as to Plaintiff Lalaine Rabaino, as Personal Representative of the Estate of Jovencio Lopez.  On October 1, 2007, Abadilla joined County's motion.  On October 26, Plaintiffs filed their response, and on November 2, 2007, the County

---

[7](...continued)
*Id.* at 646-47 (*quoting* Advisory Committee's Note on Fed. R. Evid. 802(d)(2)(D)).

[8]  During the November 13, 2007 Hearing, Plaintiffs' counsel clarified and agreed to narrow the five enumerated causes of action.  Specifically, Plaintiffs' counsel: (1) agreed to strike all references in Counts I-III to Article 1, Sections 2, 5 and 7 of the Hawaii Constitution; (2) agreed that Count IV should be read as an intentional infliction of emotional distress claim; and (3) asserted that Count V, which stated that Defendants "acted knowingly, intentionally, willfully and deliberately without regard for the rights, interests and well being of Plaintiffs," was directed to punitive damages and is not an independent cause of action.

filed a reply.  The court held a hearing on this motion on November 13, 2007.  For the foregoing reasons, the court GRANTS in part and DENIES in part the County's Motion for Summary Judgment.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 316, 321 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).  "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 321 (internal quotations omitted).

The burden initially lies with the moving party to show that there is no genuine issue of material fact.  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The moving party may discharge its burden by showing that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  "When the moving party has carried its

11

burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case.  *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  <u>ANALYSIS</u>

## A.     County Liability Under Section 1983

The County alleges that it cannot be held liable for the "Estate's alleged injuries because those injuries were not the result of an unconstitutional policy or custom of the county."  County Br. at 11.  Because a genuine issue of

fact exists whether the County had an unconstitutional custom of allowing officers to plant drugs on suspects, the court rejects this argument.

The County cannot be held liable under § 1983 on the theory of respondeat superior. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Rather, "Congress intended to hold municipalities liable only when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) (*quoting Monell*, 436 at 691). The actions of individual employees can support liability against a municipality under § 1983 in three situations: (1) where those employees were acting pursuant to an official municipal policy, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (stating that "[t]he 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality"); (2) where an employee with final policymaking authority commits a constitutional violation, *Christie*, 176 F.3d at 1235; or (3) where the employees committed a constitutional violation "pursuant to a longstanding practice or custom." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003); *see also Monell*, 436 U.S. at 690-91 (stating that a municipality may be sued for "constitutional deprivations visited pursuant to governmental 'custom' even though such custom

13

has not received formal approval through the [governmental] body's official

decisionmaking channels.").

"Liability for improper custom may not be predicated on isolated or

sporadic incidents; it must be founded upon practices of sufficient duration,

frequency and consistency that the conduct has become a traditional method of

carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (*citing*

*Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984)); *Meehan v. L.A.*

*County*, 856 F.2d 102 (9th Cir. 1988) (finding that two incidents not sufficient to

establish custom); *Davis v. Ellensburg*, 869 F.2d 1230 (9th Cir. 1989) (deciding

that manner of one arrest insufficient to establish policy); *see also Thompson v.*

*City of L.A.*, 885 F.2d 1439, 1444 (9th Cir. 1989).  A plaintiff may prove "the

existence of a custom or informal policy with evidence of repeated constitutional

violations for which the errant municipal officials were not discharged or

reprimanded." *Gillette v. Delmore*, 979 F.2d 1342, 1348 (9th Cir. 1992).  Once

such showing is made, a municipality may be liable for its custom "irrespective of

whether official policymakers had actual knowledge of the practice at issue."

*Thompson*, 885 F.2d at 1444.  At summary judgment, "[n]ormally, the question of

whether a policy or custom exists would be a jury question.  However, when there

are no genuine issues of material fact and the plaintiff has failed to establish a

14

prima facie case, disposition by summary judgment is appropriate."  *Trevino*, 99

F.3d at 920.

Although close, Plaintiffs have presented sufficient evidence raising

the question whether the County had a "long standing practice that condoned

planting drugs on suspects and arrest and prosecution of same."  Pls.' Br. 22.  In

her memorandum to Mr. De Costa, the KPD Chief of Police and Deputy Chief of

Police, Ms. Flores explained that the charges against D. Lopez were dropped after

two officers told her that they believed Abadilla arranged for Balgos to plant the

drugs in the Lopez residence.   Pls.' Ex. 1.[9]  One officer indicated that this was not

an isolated incident:

> Anonymous said that in the past he and other officers had
> complained to Lt. Quibilan about Sgt. Abadilla's questionable
> practices, but that Lt. Quibilan didn't do anything.  Neither
> Anonymous nor Officer Channing Tada implied that Lt.
> Quibilan was dirty or involved in anything dirty; he just
> seemed reluctant to take any action.

Further, Ms. Flores relayed to Mr. Zenger that Mr. De Costa told her

that when he was a deputy prosecutor he told the County Prosecutor that there

were officers he would not work with because Mr. De Costa knew they planted

---

[9] Abadilla has been employed with the KPD since 1989, and assigned to the vice division since 1998.  County Ex. C at C00228.  In the past fifteen years, he has been involved in at least 150 drug investigations.  *Id.* at C00232.

drugs.[10]  Zenger Decl. ¶ 3.  In drawing all reasonable inferences on behalf of

Plaintiffs, this evidence raises a genuine fact issue that officers may have planted

drugs on multiple occasions constituting a practice of "sufficient duration,

frequency and consistency that the conduct has become a traditional method of

carrying out policy." *Trevino*, 99 F.3d at 918.

  The County's attempt to apply *Trevino* to these facts fails.  In

*Trevino*, the plaintiff argued that the City of Los Angeles had an improper policy

of indemnifying police officers for punitive damages judgments.  In affirming

summary judgment for the City, the Ninth Circuit confirmed that "[t]he record is

virtually devoid of any direct evidence of council indemnification prior to the

[incident]."  *Id.* at 919.  A genuine issue of fact could not be created by resorting

to "inference, conjecture and speculation" from the City's inconsistent *ad hoc*

practice of resolving claims.  *Id.* at 920; *see also Meehan*, 856 F.2d 102 (two

incidents not sufficient to establish custom); *Turner v. City & County of Honolulu*,

---

[10] Defendants argue that the Zenger and Murphy Declarations at most show that Kauai prosecutors, as compared to KPD, knew that drugs were illegally planted.  County Reply at 9. Because both the KPD and prosecutors are part of the County, the court rejects this argument. *See* Pls.' Ex. 11 at Arts. IXA & XI (governing the Prosecuting Attorney and creating KPD). Further, Plaintiffs need only make a showing of repeated constitutional violations, not that official policymakers had actual knowledge of the practice.  *See Thompson v. City of L.A.*, 885 F.2d 1439, 1444 (9th Cir. 1989) (Once a showing is made of repeated constitutional violations, a municipality may be liable "irrespective of whether official policymakers had actual knowledge of the practice at issue.").

2007 WL 1341132, at *3 n.5 (D. Haw. May 3, 2007) ("Plaintiff's claim that two

City prosecutors withheld information or evidence during unrelated prosecutions

does not demonstrate the requisite policy or custom for municipal liability under §

1983.  Even assuming these claims are true, the alleged incidents are isolated and

do not amount to a City custom.").

     In comparison, Plaintiffs here have submitted evidence -- when

viewed in the light most favorable to them -- that officers within KPD, and

Abadilla in particular, engaged in several instances of planting drugs.  This

evidence raises a question of fact whether officers engaged in "repeated

constitutional violations for which the errant municipal officials were not

discharged or reprimanded." *Gillette*, 979 F.2d at 1348.  Summary judgment on

this basis is therefore DENIED.

**B.     Violation of J. Lopez's Rights**

     ***1.     Probable Cause for Search Warrant***

     Defendants argue that summary judgment should be granted because

KPD's search of the Lopez residence was conducted pursuant to a valid search

warrant such that the search and any seizure were reasonable.  The court disagrees.

     Probable cause to issue a search warrant exists when "given all the

circumstances set forth in the affidavit . . . there is a fair probability that

contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) ("It is well-settled that the determination of probable cause is based upon the totality of the circumstances known to the officers at the time of the search." (*citing Gates*, 462 U.S. at 238)).  A search warrant is void and improper where the affiant knowingly and intentionally, or with reckless disregard for the truth, includes a false statement in the warrant affidavit and the allegedly false statement is necessary to the finding of probable cause.  *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *see also United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985), *amended by* 769 F.2d 1410 (9th Cir. 1985) (extending *Franks* violations to omissions as well as misrepresentations).  On summary judgment, a "plaintiff must make (1) a 'substantial showing' of deliberate falsehood or reckless disregard for the truth, and (2) establish that but for the dishonesty, the challenged action would not have occurred.  If a plaintiff satisfies these requirements, 'the matter should go to trial.'"  *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (*quoting Liston v. County of Riverside*, 120 F.3d 965, 972-75 (9th Cir. 1997)).[11]

---

[11]  Both parties assert that this "substantial showing" requirement is the proper standard on summary judgment.  The case law relied on by the parties, however, either applies this standard in qualified immunity cases or is from other circuits.  *See Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (applying "substantial showing" test to qualified immunity issue); *Perlman v. City of Chi.*, 801 F.2d 262, 264 (7th Cir. 1986) ("[T]he First Circuit applied the 'substantial

(continued...)

Using the summary judgment standard, the court finds that Plaintiffs have made a "substantial showing" that Abadilla made false statements that were necessary for probable cause for the warrant.  In support of his warrant affidavit, Abadilla stated that he had received information from a CS that D. Lopez was selling ice from the Lopez residence and his car, and that Abadilla watched the CS meet with D. Lopez to purchase ice at several pre-arranged locations and the Lopez residence.  County Ex. C at C00234-41.  For each of these purchases, Abadilla asserts that he searched the CS prior to the alleged purchases, provided the CS money to purchase the drugs, continuously followed and monitored the CS to and from the CS's meetings with D. Lopez, and then received the drugs that the CS allegedly purchased from D. Lopez.  *Id.*  Plaintiffs assert that these affidavit

---

[11](...continued)
preliminary showing' requirement in a § 1983 action which alleged that a warrant affidavit contained false statements.  *See Krohn v. United States*, 742 F.2d 24, 31 (1st Cir. 1984). We believe that this approach to the type of claim before us now sensibly and effectively promotes the policy expressed by the Supreme Court.").  Other circuits have applied a more general standard in determining whether probable cause existed for a warrant.  *See Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989) ("While the Court is the factfinder in a *Franks* suppression hearing preliminary to a criminal trial, in a § 1983 action, fact-finding under the *Franks* standard is the province of the jury."); *Garris v. Rowland*, 678 F.2d 1264, 1270 (5th Cir. 1982) ("[W]here facts relied upon to show probable cause in a § 1983 action are controverted, they must be resolved by the jury before controlling legal principles can be applied."); *Wilkes v. Young*, 28 F.3d 1362, 1372-73 (4th Cir. 1994) ("In a § 1983 damages action for unconstitutional arrest, whether a particular statement in a warrant affidavit is false or misleading within the meaning of *Franks*, and, if so, whether it was made with knowledge of its falsity or reckless disregard for its truth, are themselves subsidiary questions of fact for the jury.").  Because Plaintiffs have met the higher "substantial showing" burden of proof, the court need not determine which of these standards is most appropriate.

statements are false, and submit D. Lopez's deposition testimony that he did not deal ice to the CS at any of the times listed in Abadilla's affidavit, and does not deal drugs.  Pls.' Ex. 9 at 106-108.

D. Lopez's testimony -- that he did not sell drugs to the CS -- does not merely contest that he sold drugs to the CS, but contests whether any meeting between the CS and D. Lopez ever occurred from which Abadilla could form his "reasonable belief."  Indeed, the County dropped the charges against D. Lopez after two officers told Ms. Flores that the case was "dirty from the beginning" because Abadilla worked with the CS to plant drugs.  Pls.' Ex. 1.  This evidence provides a substantial showing questioning whether Abadilla witnessed any meetings between the CS and D. Lopez.  Because these meetings were the basis for probable cause of the warrant, without Abadilla's observational statements the affidavit would not support probable cause for the warrant to issue.  *See Franks*, 438 U.S. at 155-56 (finding that warrant is invalid only if the affiant included a knowing and intentional false statement that was necessary to the finding of probable cause).  Summary judgment is therefore DENIED on this basis.

///

///

///

## 2. *Illegal Seizure/Violation of Due Process*

Defendants argue that there is no evidence that J. Lopez was seized, arrested, or detained during the raid.  County Br. at 15-16.  The court rejects this argument.

The Supreme Court has described a "seizure" as the following:

> We have long understood that the Fourth Amendment's protection against "unreasonable . . . seizures" includes seizure of the person, *see Henry v. United States*, 361 U.S. 98, 100, 80 S.Ct. 168, 170, 4 L.Ed.2d 134 (1959).  From the time of the founding to the present, the word "seizure" has meant a "taking possession," 2 N. Webster, An American Dictionary of the English Language 67 (1828); 2 J. Bouvier, A Law Dictionary 510 (6th ed. 1856); Webster's Third New International Dictionary 2057 (1981).  For most purposes at common law, the word connoted not merely grasping, or applying physical force to, the animate or inanimate object in question, but actually bringing it within physical control.

*California v. Hodari D*., 499 U.S. 621, 624 (1991); *see also Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) (defining seizure as "an intentional acquisition of physical control").  A person may be "seized" at their residence during a police search for contraband.  *See Michigan v. Summers*, 452 U.S. 692, 711 (1981) ("[A] warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted."); *Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994)

(noting that "while detentions of occupants during the period of a search will under most circumstances prove to have been reasonable, a detention may be unreasonable in a particular instance either because the detention itself is improper or because it is carried out in an unreasonable manner").

To support their contention that J. Lopez was "seized," Plaintiffs have submitted evidence that J. Lopez's room was "cleared" and that all persons found in the Lopez residence during the raid were "secured."  County Ex. C at C00217. The County presented no evidence to explain how the room was cleared or how the residents were secured.  Viewing the evidence in the light most favorable to Plaintiffs, the evidence establishes a fact question whether J. Lopez was seized during the raid.  Summary judgment on this claim is DENIED.

### 3.    *Violation of Privacy Rights*

Plaintiffs brought their violation of privacy rights claim pursuant to the Ninth and Fourteenth Amendments.  Because a violation of privacy claim stemming from an alleged invalid warrant is properly brought pursuant to the Fourth Amendment, summary judgment should be granted on this claim.[12]

---

[12]  The court raised this issue during the hearing, and gave the parties the opportunity to submit briefing on why Plaintiffs' violation of privacy claim should not be dismissed pursuant to *Graham v. Connor*, 490 U.S. 386 (1989).  All parties declined to submit further briefing.

"Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *County of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998) (*quoting Albright v. Oliver*, 510 U.S. 266, 273 (1994)).  The Fourth Amendment recognizes the "right of the people to be secure in their persons . . . against unreasonable searches . . . ." U.S. Const. amend. IV.  Given the Fourth Amendment's "explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also id.* (finding that § 1983 claims for excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment"); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1203 (2003) ("As we explain below, the physical examinations challenged here were searches for purposes of the Fourth Amendment, and the privacy interests of the children can fully be vindicated under that explicit textual source of constitutional protection.  Accordingly, the Fourth Amendment, and not the more generalized notion of

substantive due process, must be the guide for analyzing these claims." (citation

and quotation signals omitted)).

For these reasons, the County's motion for summary judgment on this

claim is GRANTED.

### 4.        *Intentional Infliction of Emotional Distress*

The County argues that summary judgment is appropriate on the

Estate's claims for intentional infliction of emotional distress ("IIED") because

(1) there was no wrongful or outrageous conduct toward J. Lopez, (2) the County

cannot be held vicariously liable for the alleged acts of Abadilla, and (3) there is

no causal link between J. Lopez's deteriorating health condition and the search of

the Lopez residence.  County Br. at 19; County Reply at 16-18.  The court

disagrees on each of these points.

"[T]he elements of the tort of intentional infliction of emotional

distress are 1) that the act allegedly causing the harm was intentional or reckless,

2) that the act was outrageous, and 3) that the act caused 4) extreme emotional

distress to another."  *Hac v. Univ. of Haw.*, 102 Haw. 92, 106-07, 73 P.3d 46, 60-

61 (2003) (adopting the elements of IIED prescribed by the Restatement (Second)

of Torts).  "To ensure the genuineness of emotional distress claims," there must be

some showing "that the distress suffered is 'serious.'"  *Campbell v. Animal*

24

*Quarantine Station*, 63 Haw. 557, 564-65, 632 P.2d 1066, 1070-71 (1981).

Serious mental distress "may be found where a reasonable man, normally

constituted, would be unable to adequately cope with the mental stress engendered

by the circumstances of the case." *Rodrigues v. State*, 52 Haw. 156, 173, 472 P.2d

509, 520 (1970). "[T]he general standard of proof required to support a claim of

mental distress is some guarantee of genuineness in the circumstances of the

case." *Id.* at 172, 472 P.2d at 520 (*citing* Cf. Prosser, Torts § 55 at 349). "Medical

proof can be offered to assist in proving the 'seriousness' of the claim and the

extent of recovery, but should not be a requirement allowing or barring the cause

of action. Once the trial court or the jury is satisfied that the distress is 'serious,'

the duration and symptoms of the distress affect the amount of recovery."

*Campbell*, 63 Haw. at 564, 632 P.2d at 1071; *see also Tabieros v. Clark Equip.*

*Co.*, 85 Haw. 336, 362, 944 P.2d 1279, 1305 (1997) (recognizing that while

"physical injury to the claimant, overt symptoms or manifestations of emotional

distress, the actual witnessing of the tortious event, and/or supporting expert or

medical testimony are not *prerequisites* to [a negligent infliction of emotional

distress] claim, the presence or absence of these factors may nevertheless be

*relevant* to establishing the existence of 'serious' emotional distress as a response

to a tortious event.").

As discussed above, it is a question of fact whether KPD searched the Lopez residence pursuant to a valid warrant, and whether the County is liable for these actions.  Accordingly, the court addresses only whether Plaintiffs have raised a fact issue that the raid caused extreme emotional distress to J. Lopez.  Plaintiffs have submitted evidence that J. Lopez was depressed, fearful, and exhibited a loss of appetite after the raid,  Rabaino Decl. ¶¶ 4, 8; County Ex. B at 57, and that he expressed that he was scared and no longer wanted to stay in the house because the police may come back.  Rabaino Decl. ¶ 5; County Ex. B at 57.  This testimony, from J. Lopez's primary care giver and daughter, provides  "some guarantee of genuineness," making summary judgment on this claim inappropriate.  *See Rodrigues*, 52 Haw. at 172, 472 P.2d at 520 (*citing* Cf. Prosser, Torts § 55 at 349).  While the County argues that the evidence of J. Lopez's injuries is speculative, medical records supporting an IIED claim are not necessary.  *See Campbell*, 63 Haw. at 564, 632 P.2d at 1071; *see also Tabieros*, 85 Haw. at 362, 944 P.2d at 1305.  Where the record includes some evidence of emotional distress, "the question of whether such distress amounted to serious mental distress which a reasonable man normally constituted could not adequately cope with is one for the jury."  *Silva v. Bisbee*, 2 Haw. App. 188, 192, 628 P.2d 214, 217 (1981).  For this reason, summary judgment on this claim is DENIED.

### 5.      *Punitive Damages*

A plaintiff may not recover punitive damages against a municipality for § 1983 claims.  *See Jefferson v. City of Tarrant*, 522 U.S. 75 (1997) (*citing Newport v. Fact Concerts, Inc*., 453 U.S. 247 (1981)).  Summary judgment is therefore GRANTED for the County, but not Abadilla, on this claim.

## C.      **Causation of Harm**

Defendants argue Plaintiffs cannot prove that Defendants' acts caused harm and/or damages to J. Lopez such that summary judgment must be granted on J. Lopez's § 1983 claims.  This argument is without merit.

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law."  *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991); *see also Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986) (requiring plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution").  Conspicuously missing from the required elements of a § 1983 action is damages.  Indeed, where there is no proof of actual injury, a denial of procedural due process is nonetheless actionable for nominal damages.  *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *see*

*also Trevino*, 99 F.3d at 922 (noting that where "a jury fails to find actual injury, nominal damage awards for constitutional violations are appropriate.").

Based on the above, J. Lopez's estate need not prove injury for his claims against Defendants to survive summary judgment.  The court DENIES summary judgment on this basis.

**D.      Wrongful Death**

While not specifically enumerated as a claim in the Complaint, Plaintiffs assert that J. Lopez died as a result of the KPD police raid.[13] As discussed above, Plaintiffs have presented evidence that J. Lopez was injured, but there is no evidence that J. Lopez's death was a result of the raid.  J. Lopez died over one year after the raid after a long history of diabetes, hypertension, and heart problems.  The County submitted J. Lopez's voluminous medical record, which catalogs these health problems and provides no connection between J. Lopez's declining health and the police raid.  County Ex. D.  Moreover, D. Lopez's cause of death is listed as "(a) cardiopulmonary failure \ 1 hr, (b) aspiration pneumonia\ 1 day, and (c) coronary artery disease \ 2 years."  *Id*. Plaintiffs provide nothing more than family declarations attesting to J. Lopez's

---

[13]  At the hearing, Plaintiffs' counsel asserted that they are seeking damages for wrongful death.

injuries -- no doctor's reports, expert testimony, etc. -- to support the inference that

J. Lopez died because of the police raid.  With no evidence, Plaintiffs' argument

that Defendants' actions shortened J. Lopez's lifespan is supported by nothing

more than speculation.  Accordingly, the County's motion for summary judgment

on this basis is GRANTED.

## V.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES

in part County's Motion for Partial Summary Judgment as to Plaintiff Lalaine

Rabaino, as Personal Representative of the Estate of Jovencio Lopez, filed on

August 29, 2007.

As a result of the court's ruling, the following claims of the Estate

against all Defendants remain:  illegal search of residence in violation of

Plaintiffs' Fourth and Fourteenth Amendment rights (Count I), illegal seizure,

arrest and detention of Plaintiffs in violation of Plaintiffs' Fourth and Fourteenth

Amendment rights (Count II), and to the extent the Estate does not seek wrongful

death damages, intentional infliction of emotional distress (Count IV).  The

Estate's claim for punitive damages against Abadilla also remains.

Further, even though the County moved for summary judgment of the

Estate's claims only, the court's reasoning granting summary judgment on Count

III of the Complaint, 42 U.S.C. § 1983 violations based on an invasion of privacy in violation of Plaintiffs' Ninth and Fourteenth Amendment rights, applies equally to the other Plaintiffs.  The court GRANTS summary judgment on Count III as to all Plaintiffs for the reasons discussed above.  If any party disagrees that summary judgment should not be granted for Count III as to all Plaintiffs, such party should file a motion for reconsideration within 10 days of this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 4, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Lopez et al. v. County of Kauai et al.*, Civ. No. 06-00325 JMS/KSC; ORDER GRANTING IN PART AND DENYING IN PART COUNTY'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' COMPLAINT FILED ON JUNE 16, 2006 (COUNTS I-V) AS TO PLAINTIFF LALAINE RABAINO, As Personal Representative of the Estate of JOVENCIO LOPEZ